**FILED**

**March 6, 2017**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 11:46 AM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KINGSPORT

| | |
|---|---|
| **Michael C. Richards,** Employee, | ) Docket No. 2016-02-0436 |
| **v.** | ) State File No. 64483-2016 |
| **A-1 Expert Tree Service,** Employer, **And** | ) Judge Brian K. Addington |
| **Riverport Ins. Co.,** Carrier. | ) |

---

### EXPEDITED HEARING ORDER

---

This matter came before the undersigned Workers' Compensation Judge on March 1, 2017, upon the Request for Expedited Hearing filed by Michael Richards for temporary disability benefits. The central legal issue is whether Mr. Richards' present average weekly wage and compensation rate are correct. The corresponding benefit dispute concerns whether Mr. Richards is entitled to additional temporary disability benefits. The Court holds Mr. Richards has come forward with sufficient evidence to establish he is likely to prevail at a hearing on the merits. Therefore, he is entitled to the requested temporary disability benefits.

### History of Claim

Mr. Richards worked for A-1 Expert Tree Service intermittently since 2008. He performed many jobs for A-1 but primarily drove the grabber truck and picked up debris to take to a dumpsite. He suffered a compensable injury on July 30, 2016, when his foot slipped exiting the grabber truck. A-1 accepted Mr. Richards' workers' compensation claim. He is currently receiving authorized medical treatment, but a dispute arose over his average weekly wage and compensation rate. The employer paid Mr. Richards temporary benefits in the amount of $151.91 per week.

1

*Mr. Richards' Version of Events*

Mr. Richards testified that, after a brief period working for a different employer, he returned to work for A-1 in August 2015. He asserted that A-1 paid him ten dollars per hour, and he worked forty hours per week or more. He requested A-1's owner, David Williams, pay him in cash, as it helped him clear more take-home pay. On cross-examination, he admitted during some weeks he worked fewer than forty hours, but worked more than forty hours during others. In addition, he performed odd jobs at Mr. Williams' home and at the homes of Mr. Williams' relatives. Mr. Richards stated that those work hours were not listed on his timecard, because he would not go to the office and clock-in before he started work. Mr. Richards acknowledged that, other than the timecards placed into evidence, he had no documentary evidence of the hours he worked.

*Ms. Christy Tomlinson's Version of Events*

Ms. Tomlinson is Mr. Richards' girlfriend. She testified she often took him to work and/or picked him up. She testified he worked a full-time schedule of at least forty hours per week for most of the year before the work injury. However, she also acknowledged that Mr. Richards worked fewer than forty hours per week on occasion, depending on the work available. Further, Ms. Tomlinson stated she assisted Mr. Richards in accounting for both his work hours at A-1 and his owed wages.

*Mr. Wayne Frazier's Version of Events*

Mr. Frazier is a friend of Mr. Richards who, at times, employed him to perform work on his farm. Mr. Frazier testified he would, on occasion (twelve to fifteen times per year), pick up Mr. Richards from work at A-1. He always picked Mr. Richards up in the evening.

*Ms. Brenda Richards' Version of Events*

Ms. Richards is Mr. Richards' mother. She testified she would take Mr. Richards to and from work at A-1 four to five times per week, dropping him off in the morning and picking him up in the evening.

*Mr. Williams' Version of Events*

Mr. Williams testified Mr. Richards returned to work for A-1 in August 2015. He worked until his injury occurred and earned ten dollars per hour. Mr. Williams paid Mr. Richards in cash. According to Mr. Williams, Mr. Richards was not a full-time employee; he worked only as needed. Mr. Williams testified that the earnings listed on Mr. Richards' typed wage statement contain all the records A-1 possessed concerning Mr. Richards' wages. When Mr. Richards worked at Mr. Williams' or his relatives'

2

homes, his work was not part of his duties for A-1. Mr. Williams testified his relatives paid Mr. Richards separately for his work.

*Parties' Arguments*

During the hearing, Mr. Richards contended his average weekly wage was at least $400.00 per week, but he did not give an exact figure. He asserted his timecards and witnesses proved he worked more than forty hours per week. He requested the Court determine his proper average weekly wage and corresponding compensation rate, because A-1 was paying his temporary benefits at the wrong amount.

A-1 acknowledged that it initially determined the wrong average weekly wage and compensation rate for Mr. Richards, explaining it excluded some information in its calculations. However, A-1 argued the typed, amended wage statement it submitted was correct, and that Mr. Richards' correct average weekly wage was $244.09 with a corresponding $162.74 compensation rate. A-1 asked the Court to set the rates at these amounts. It acknowledged if the rate were set at this amount, it would have underpaid Mr. Richards $339.48.

**Findings of Fact and Conclusions of Law**

As in all workers' compensation actions, Mr. Richards, as the claimant, has the burden of proof on all essential elements of his claim. Tenn. Code Ann. § 50-6-239(c)(6) (2016); *see also Buchanan v. Carlex Glass Co.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Sept. 29, 2016). He need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, 2016 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2016). However, at an expedited hearing, Mr. Richards has the burden to come forward with sufficient evidence from which this Court can determine he is likely to prevail at a hearing on the merits. *Id.*

The dispute in this case concerns Mr. Richards' average weekly wage and corresponding compensation rate. Average weekly wages are the earnings of an employee in the employment in which he was injured during a period of fifty-two weeks preceding the date of injury. Tenn. Code Ann. § 50-6-102(3)(A) (2016). For this case, the fifty-two weeks in question cover the period from July 29, 2015, to July 29, 2016. Mr. Richards' temporary total disability benefit rate is two-thirds of his average weekly wage for that period. *See* Tenn. Code Ann. § 50-6-207(1)(A) (2016).

For some reason not apparent to the Court, the parties did not attempt to introduce any written evidence of Mr. Richards' earnings for the entire fifty-two week period, but focused only on the weeks from January 1, 2016, until Mr. Richards' injury. When asked by the Court whether the parties had engaged in any discovery, both parties

3

acknowledged they had not.

The parties have a duty to provide the Court with information from which the Court can make appropriate findings of fact. According to Tennessee Compilation Rules and regulations 0800-02-21-10 (3) (2016), an employer shall provide a wage statement detailing the employee's wages over the fifty-two week period in question. A-1 offered no excuse for its failure to detail Mr. Richards' wages for the entirety of the period in question. Mr. Richards did not inquire into the employer's failure.

After asserting that A-1 miscalculated his average weekly wage, Mr. Richards assumed the burden to come forward with sufficient evidence to prove his correct average weekly wage. Instead, Mr. Richards agreed with A-1 that the timecards presented were the only available written records on the subject. Only one timecard presented indicated Mr. Richards worked more than forty hours per week. The rest showed he worked fewer than forty hours. The remainder of his proffered evidence was comprised of his own and his witnesses' testimony. None of the witnesses provided any specific dates on which they took him to work and/or picked him up from work. Their testimony constituted general statements with no details upon which the Court could base a finding of fact. The Court cannot use such general statements to supplement the written proof in this matter.

As such, this Court is presented with an incomplete wage statement from the employer. However, at this time, the provided wage statement is the best evidence the Court has of Mr. Richards' average weekly wage for the relevant period. It contains the written proof,[1] as acknowledged by the parties, of Mr. Richards' wages from January 1, 2016, until the date of his injury. However, the Court must remove the last week listed on the wage statement because it contains wages Mr. Richards' earned on the day of his injury.[2]

Based on the available information, the Court holds that Mr. Richards is likely to succeed at a hearing on the merits, but not at the rate he requested. The Court holds Mr. Richards earned average weekly wages of $250.00 per week, and further holds that his compensation rate is $166.67.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Richard's average weekly wage is $250.00 per week, and his compensation rate is $166.67. A-1 shall pay Mr. Richards any underpayment based on these figures.

---

[1] Mr. Richards asserted there were more timecards, but he did not have possession of them.
[2] Average weekly wages, as stated before, are determined by the fifty-two week period *preceding* the injury.

4

2. This matter is set for a Scheduling Hearing on April 11, 2017, at 10:00 a.m. Eastern Time. The parties must call 855-943-5044 toll-free to participate in the hearing. Failure to appear by telephone may result in determination of the issues without your further participation.

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4. For questions regarding compliance, please contact the Worker's Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 6th day of March, 2017.**

_/s/ Brian K. Addington_
**Judge Brian K. Addington**
**Court of Workers' Compensation Claims**

5

# APPENDIX

Exhibits:
1. Affidavit of Michael Richards
2. First Report of Injury
3. Wage Statements
4. Medical Records-Associated Orthopedics
5. Timecards
6. Cell Phone Text
7. Affidavit of Christy Tomlinson
8. Affidavit of Wayne Frazier

Technical Record
1. Petition for Benefit Determination
2. Employer's Response to Petition for Benefit Determination
3. Dispute Certification Notice
4. Request for Expedited Hearing
5. Employee's Pre-Hearing Statement
6. Employer's Pre-Hearing Statement

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 6th day of March, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Larry Dillow, Esq. Employee's Attorney | | | X | larrylawyer@chartertn.net |
| Nicholas Snider, Esq. Employers' Attorney | | | X | nsnider@morganakins.com |

/s/ Penny Shrum
**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**